Opinion for the Court filed PER CURIAM.
Opinion concurring in the judgment filed by Circuit Judge ROGERS.
PER CURIAM.
On March 1, 2010, the Supreme Court vacated our judgment in Kiyemba v. Obama, 555 F.3d 1022 (D.C.Cir.2009) (Kiyemba I), and remanded the case to us to “determine ... what further proceedings” in our court or in the district court “are necessary and appropriate for the full and prompt disposition of the case in light of the new developments,” Kiyemba v. Obama, — U.S. -, 130 S.Ct. 1235, 1235, — L.Ed.2d -, - (2010) (per curiam). We assume familiarity with our Kiyemba I opinion. The “new developments” the Court identified were as follows. All seventeen petitioners “received at least one offer of resettlement in another country,” and twelve accepted an offer. Id. The remaining five “rejected two such offers and are still being held at Guantanamo Bay.” Id.
In compliance with the Supreme Court’s mandate we held further proceedings, considered the parties’ motions and heard oral argument. We now grant the government’s motion to reinstate the judgment and we reinstate our original opinion, as modified here to take account of new developments.
The posture of the case now is not materially different than it was when the case was first before us. On February 19, 2010, the government informed the Supreme Court that one of the original petitioners “had not previously received an offer of resettlement from any country” before he and his brother received offers from Switzerland in 2010. Letter from Elena Kagan, Solicitor General, to William K. Suter, Clerk of the Court, at 1 (Feb. 19, 2010). The government also told the Court that the five Uighurs who remain at Guantanamo Bay had received a total of two offers — one from Palau in September 2009, which they rejected, and then another from an unnamed country, which they also rejected. See id. at 2; Brief for Respondents at 10, Kiyemba v. Obama, — U.S. -, 130 S.Ct. 1235, — L.Ed.2d - (2010). As the government admitted at oral argument, this information — on which the Court apparently relied in its per curiam opinion — was not completely accurate. In fact, shortly before we issued our opinion in February 2009, the government filed material under seal stating that each of the seventeen petitioners had recently received a resettlement offer from a foreign country. The five petitioners who remain in this case have thus received and rejected three offers, rather than two. Our original decision was made in the light of resettlement offers to all petitioners, which is why we were confident that the government was “continuing diplomatic attempts to find an appropriate country willing to admit petitioners.” Kiyemba I, 555 F.3d at 1029.
We agree with the government that no legally relevant facts are now in dispute. None of petitioners’ arguments turn on particular factual considerations. Petitioners want us to remand the case to the district court for an evidentiary hearing on whether any of the resettlement offers were “appropriate.” But as our original *1048 opinion indicated, even if petitioners had good reason to reject the offers they would have no right to be released into the United States. In addition, an intervening opinion of this court precludes the sort of judicial inquiry petitioners seek; it is for the political branches, not the courts, to determine whether a foreign country is appropriate for resettlement. Kiyemba v. Obama, 561 F.3d 509, 514-16 (D.C.Cir.2009) (Kiyemba II) (discussing Munaf v. Geren, 553 U.S. 674, 128 S.Ct. 2207, 2225-26, 171 L.Ed.2d 1 (2008)); see also id. at 516-17 (Kavanaugh, J., concurring).
Our original opinion in 2009 held that it was within “the exclusive power of the political branches to decide which aliens may, and which aliens may not, enter the United States, and on what terms.” Kiyemba I, 555 F.3d at 1025. At the time of our decision we had heard only from the Executive Branch. Since then, the Legislative Branch has spoken. In seven separate enactments — five of which remain in force today — Congress has prohibited the expenditure of any funds to bring any Guantanamo detainee to the United States. See Supplemental Appropriations Act, 2009, Pub.L. No. 111-32, § 14103, 123 Stat. 1859, 1920; Continuing Appropriations Resolution, 2010, Pub.L. No. 111-68, Div. B., § 115, 123 Stat.2023, 2046; Department of Homeland Security Appropriations Act, 2010, Pub.L. No. 111-83, § 552, 123 Stat. 2142, 2177-78; National Defense Authorization Act for Fiscal Year 2010, Pub.L. No. 111-84, § 1041, 123 Stat. 2190, 2454-55; Department of the Interior, Environment, and Related Agencies Appropriations Act, 2010, Pub.L. No. 111-88, Div. A, § 428, 123 Stat. 2904, 2962; Consolidated Appropriations Act, 2010, Pub.L. No. 111-117, § 532, 123 Stat. 3034, 3156; Department of Defense Appropriations Act, 2010, Pub.L. No. 111-118, § 9011, 123 Stat. 3409, 3466-67. Petitioners say these statutes, which clearly apply to them, violate the Suspension Clause of the Constitution. U.S. Const. Art. I, § 9, cl. 2. But the statutes suspend nothing: petitioners never had a constitutional right to be brought to this country and released. Petitioners also argue that the new statutes are unlawful bills of attainder. The statutory restrictions, which apply to all Guantanamo detainees, are not legislative punishments; they deprive petitioners of no right they already possessed. See Nixon v. Adm’r of Gen. Servs., 433 U.S. 425, 475, 481, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977).
We therefore reinstate the judgment and reinstate our opinion, as modified here to take into account these new developments.

So Ordered.