SILBERMAN, Senior Circuit Judge,
concurring:
I concur in the court’s per curiam opinion affirming the district court’s denial of petitioner’s writ. The government’s evidence is easily sufficient to meet any evidentiary standard. (Indeed, I find petitioner’s “story” phonier than a $4 bill.) I write separately for two reasons. First, to note that the government at oral argument agreed that even if petitioner could show he resolutely declined to “join” al Qaeda or the Taliban, and thus could not be said to be a part of either, so long as evidence showed he fought along side of al Qaeda, the Taliban, or with associated forces he would be covered by the Authorization for Use of Military Force. District courts, in that sort of case, need not strain to find a petitioner is “a part of al Qaeda.” See Hatim v. Gates, 632 F.3d 720, 721 (D.C.Cir.2011); Awad v. Obama, 608 F.3d 1, 9 n. 1 (D.C.Cir.2010); Al-Bihani v. Obama, 590 F.3d 866, 871-72 (D.C.Cir.2010).[1]
My second point, not unrelated to the first, goes to the unusual incentives and disincentives that bear on judges on the D.C. Circuit courts — particularly the Court of Appeals — charged with deciding these detainee habeas cases. In the typical criminal case, a good judge will vote to overturn a conviction if the prosecutor lacked sufficient evidence, even when the judge is virtually certain that the defendant committed the crime. That can mean that a thoroughly bad person is released onto our streets, but I need not explain why our criminal justice system treats that risk as one we all believe, or should believe, is justified.
When we are dealing with detainees, candor obliges me to admit that one can not help but be conscious of the infinitely *1078 greater downside risk to our country, and its people, of an order releasing a detainee who is likely to return to terrorism. One does not have to be a “Posnerian” — a believer that virtually all law and regulation should be judged in accordance with a cost/benefit analysis — to recognize this uncomfortable fact.
That means that there are powerful reasons for the government to rely on our opinion in Al-Adahi v. Obama, 613 F.3d 1102 (D.C.Cir.2010), which persuasively explains that in a habeas corpus proceeding the preponderance of evidence standard that the government assumes binds it, is unnecessary — and moreover, unrealistic. Id. at 1104-05. I doubt any of my colleagues will vote to grant a petition if he or she believes that it is somewhat likely that the petitioner is an al Qaeda adherent or an active supporter. Unless, of course, the Supreme Court were to adopt the preponderance of the evidence standard (which it is unlikely to do — taking a case might obligate it to assume direct responsibility for the consequences of Boumediene v. Bush, 553 U.S. 723, 128 S.Ct. 2229, 171 L.Ed.2d 41 (2008)). But I, like my colleagues, certainly would release a petitioner against whom the government could not muster even “some evidence.”
Of course, if it turns out that regardless of our decisions the executive branch does not release winning petitioners because no other country will accept them and they will not be released into the United States, see Kiyemba v. Obama, 605 F.3d 1046, 1048 (D.C.Cir.2010); Kiyemba v. Obama, 561 F.3d 509, 516 (D.C.Cir.2009), then the whole process leads to virtual advisory opinions. It becomes a charade prompted by the Supreme Court’s defiant — if only theoretical — assertion of judicial supremacy, see Boumediene, 553 U.S. 723, 128 S.Ct. 2229 sustained by posturing on the part of the Justice Department, and providing litigation exercise for the detainee bar.

. Of course, "the purely independent conduct of a freelancer” — one who does not fight alongside of, or actively support, al Qaeda, the Taliban, or an associated force' — "is not enough” to justify detention. Bensayah v. Obama, 610 F.3d 718, 725 (D.C.Cir.2010).