KAREN LeCRAFT HENDERSON, Circuit Judge,
concurring:
I write separately to emphasize, for me, the critical nature of the Government’s concession that the Ex Post Facto Clause protects Bahlul. Had the Government not conceded the point and the Court not decided to act on the concession, cf. Young v. United States, 315 U.S. 257, 258-59, 62 S.Ct. 510, 86 L.Ed. 832 (1942), I would have reached a different conclusion. I briefly explain why.
I. It Is Not “Plain” That the Ex Post Facto Clause Protects Bahlul
“ ‘Plain’ is synonymous with ‘clear’ or, equivalently, ‘obvious.’ ” United States v. Olano, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Put another way, “the error must be ‘so plain the trial judge *32 and prosecutor were derelict in countenancing it, even absent the defendant’s timely assistance in detecting it.’ ” United States v. Saro, 24 F.3d 283, 286 (D.C.Cir. 1994) (quoting United States v. Frady, 456 U.S. 152, 163, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)). An error meets this high standard only if “its erroneous character” is established by “a clear precedent in the Supreme Court or this circuit.” United States v. Terrell, 696 F.3d 1257, 1260 (D.C.Cir.2012). Indeed, “[rjarely do we find an error to be plain where ‘this court has not ruled on the question.’ ” United States v. Laureys, 653 F.3d 27, 32-33 (D.C.Cir.2011) (per curiam) (quoting United States v. Thomas, 896 F.2d 589, 591 (D.C.Cir.1990)); see also United States v. Merlos, 8 F.3d 48, 51 (D.C.Cir.1993) (error may be plain even in absence of controlling precedent if trial court failed to follow “legal norm [that is] absolutely clear (for example, because of the clarity of a statutory provision or court rule)”). To be “plain,” the error must be clear or obvious at the time of appeal. Henderson v. United States, — U.S. -, 133 S.Ct. 1121, 1130-31, 185 L.Ed.2d 85 (2013); United States v. Miller, 738 F.3d 361, 372 (D.C.Cir .2013).
Bahlul contends that his convictions are unconstitutional because the 2006 MCA, as applied to him, is an ex post facto law. Even assuming that Bahlul is correct, the error is not plain because there is no holding by any court that an unlawful alien enemy combatant detained abroad is entitled to the protections of the Ex Post Facto Clause. Before Boumediene, Johnson v. Eisentrager, 339 U.S. 763, 70 S.Ct. 936, 94 L.Ed. 1255 (1950), and United States v. Verdugo-Urquidez, 494 U.S. 259, 110 S.Ct. 1056, 108 L.Ed.2d 222 (1990), “were thought to be the controlling Supreme Court cases on the Constitution’s application to aliens abroad.” Rasul v. Myers, 563 F.3d 527, 531 (D.C.Cir.2009) (per curiam). In Eisentrager, the Supreme Court held that the Fifth Amendment did not apply to aliens with neither property nor presence in the United States. 339 U.S. at 784, 70 S.Ct. 936. Verdugo-Urquidez, relying on Eisentrager, held that the Fourth Amendment did not apply to such aliens. 494 U.S. at 269, 273-75, 110 S.Ct. 1056. Other Supreme Court opinions similarly suggested that the Constitution did not apply outside the sovereign United States. Zadvydas v. Davis, 533 U.S. 678, 693, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001); Kwong Hai Chew v. Colding, 344 U.S. 590, 597 n. 5, 73 S.Ct. 472, 97 L.Ed. 576 (1953); United States v. Belmont, 301 U.S. 324, 332, 57 S.Ct. 758, 81 L.Ed. 1134 (1937); United States v. Curtiss-Wright Export Corp., 299 U.S. 304, 318, 57 S.Ct. 216, 81 L.Ed. 255 (1936). We have followed those precedents consistently, recognizing that the Fifth Amendment did not extend beyond the boundaries of the United States. See, e.g., Jifry v. FAA, 370 F.3d 1174, 1182-83 (D.C.Cir. 2004); 32 Cnty. Sovereignty Comm. v. Dep’t of State, 292 F.3d 797, 799 (D.C.Cir. 2002); Harbury v. Deutch, 233 F.3d 596, 603-04 (D.C.Cir.2000), rev’d on other grounds sub nom. Christopher v. Har-bury, 536 U.S. 403, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002); People’s Mojahedin Org. of Iran v. U.S. Dep’t of State, 182 F.3d 17, 22 (D.C.Cir.1999).
In Boumediene, the Supreme Court for the first time in our history extended a constitutional protection to an alien located outside the sovereign territory of the United States. 553 U.S. at 770, 128 S.Ct. 2229. But the Supreme Court “explicitly confined its constitutional holding ‘only’ to the extraterritorial reach of the Suspension Clause” and “disclaimed any intention to disturb existing law governing the extraterritorial reach of any constitutional provisions, other than the Suspension Clause.” *33 Rasul, 563 F.3d at 529 (quoting Boumediene, 553 U.S. at 795, 128 S.Ct. 2229). Indeed, it remains the law of this circuit that, after Boumediene, aliens detained at Guantanamo may not invoke the protections of the Due Process Clause of the Fifth Amendment. See Kiyemba v. Obama, 555 F.3d 1022, 1026 & n. 9 (D.C.Cir. 2009) (“due process clause does not apply to aliens without property or presence in the sovereign territory of the United States” and Guantanamo “is not part of the sovereign territory of the United States”), vacated and remanded, 559 U.S. 131, 130 S.Ct. 1235, 175 L.Ed.2d 1070 (2010), reinstated in relevant part, 605 F.3d 1046 (D.C.Cir.2010), cert. denied, — U.S.-, 131 S.Ct. 1631, 179 L.Ed.2d 925 (2011); see also Al-Madhwani v. Obama, 642 F.3d 1071, 1077 (D.C.Cir.2011); Kiyemba v. Obama, 561 F.3d 509, 518 n. 4 (D.C.Cir.2009) (Kavanaugh, J., concurring); Cuban Am. Bar Ass’n, Inc. v. Christopher, 43 F.3d 1412, 1428 (11th Cir. 1995) (Fifth Amendment does not apply to Cubans and Haitians temporarily housed at Guantanamo). Whether Boumediene in fact portends a sea change in the extraterritorial application of the Constitution writ large, we are bound to take the Supreme Court at its word when it limits its holding to the Suspension Clause. See Rodriguez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 480-81, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989). Thus, the extraterritorial inapplicability of the Ex Post Facto Clause remains as it was before Boumediene.
Bahlul points to no case from the Supreme Court or any court of appeals, nor to any other “absolutely clear” legal norm, opining that the Ex Post Facto Clause applies beyond the sovereign territory of the United States. Finding such a precedent would be a remarkable feat inasmuch as Boumediene expressly recognized that it was the first case to apply any constitutional provision to aliens located beyond our sovereign territory: “It is true that before today the Court has never held that noncitizens detained by our Government in territory over which another country maintains de jure sovereignty have any rights under our Constitution.” 553 U.S. at 770, 128 S.Ct. 2229. Because there is no clear precedent establishing that the Ex Post Facto Clause applies to aliens held at Guantanamo, prosecuting Bahlul under the 2006 MCA cannot constitute plain constitutional error.
II. The Ex Post Facto Clause Does Not Protect Bahlul
Even if our review were de novo, I would conclude that the Ex Post Facto Clause does not apply to aliens detained at Guantanamo. As discussed above, only one constitutional protection applies to Guantanamo even after Boumediene. 553 U.S. at 795, 128 S.Ct. 2229 (“Our decision today holds only that petitioners before us are entitled to seek the writ.”); see Rasul, 563 F.3d at 529. Boumediene is the law and therefore it must be followed. But before 2008, the Constitution did not apply to aliens without property or presence in the United States. After 2008, the Suspension Clause—and only the Suspension Clause—protects only those aliens detained on the southeastern tip of an island outside the sovereign United States. We have previously said that, “[a]s a novel constitutional development, we are loath to expand Boumediene’s reach without specific guidance from the Supreme Court, particularly where expansion would carry us further into the realm of war and foreign policy.” Maqaleh v. Hagel, 738 F.3d 312, 336 n. 16 (D.C.Cir.2013). I see no reason to abandon that caution.
Finally, we must remember the who, what and where of this case. Bahlul is an alien unlawful enemy combatant who—like *34 Hitler’s Goebbels—led Osama bin Laden’s propaganda operation and freely admitted his role in the 9/11 atrocities. He was tried outside the sovereign United States for war crimes. During the post-World War II Nuremberg trials several defendants raised ex post facto objections but they were rejected as “sheer absurdity” under international law. 3 Trials of War Criminals Before the Nuremberg Military Tribunals: “The Justice Case” 975 (1951). I cannot agree that Bahlul is entitled to domestic constitutional protections—to which he would not be entitled under international law—simply because his war crimes trial was held at an American naval base located in Cuba.
Accordingly, were it not for the Government’s concession that the Ex Post Facto Clause protects Bahlul, I would reach the issue and conclude that it does not.[1]

. Responding briefly to Judge Kavanaugh's concurrence, and with respect, I believe he is a solo source of confusion. He persists in reading the majority opinion to resuscitate Hamdan II. Cf. Kavanaugh Op. 63. He is wrong. I leave it to the careful reader to discern, not surprisingly, that the majority expressly oveirules Hamdan II’s statutory holding. See Majority Op. 11. Judge Kava-naugh then pivots, calling the majority’s decision to "’overrule[]’” Hamdan II ’s "statement” "a meaningless exercise.” Kavanaugh Op. 76. Despite his best efforts at revisionism, the fact of the matter is that Hamdan II was wrongly decided and today the majority so holds.