# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Filed On: February 22, 2019

No. 18-5297

ABDUL RAZAK ALI, DETAINEE,
APPELLANT

v.

DONALD J. TRUMP, PRESIDENT OF THE UNITED STATES,
ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:10-cv-01020)

———

On Petition for Initial Hearing En Banc

———

Before: GARLAND, *Chief Judge*; HENDERSON, ROGERS, TATEL*, GRIFFITH, SRINIVASAN, MILLETT, PILLARD*, WILKINS, AND KATSAS**, *Circuit Judges*

## **ORDER**

Upon consideration of appellant's petition for initial hearing en banc, the response thereto, and the absence of a request by any member of the court for a vote, it is

2

**ORDERED** that the petition be denied.

**Per Curiam**

**FOR THE COURT**:
Mark J. Langer, Clerk

BY:  /s/
Ken Meadows
Deputy Clerk

\* A statement by Circuit Judge Tatel, with whom Circuit Judge Pillard joins,  is attached.

\*\* Circuit Judge Katsas did not participate in this matter.

TATEL, *Circuit Judge*, with whom PILLARD, *Circuit Judge*, joins, concurring: At the heart of this appeal lies a question undoubtedly of exceptional importance: whether the procedural protections of the Fifth Amendment's Due Process Clause extend to persons detained at the Guantanamo Bay Naval Base. Someday this court may well need to address that question en banc, but this is not that day. Because I read our case law to leave unresolved the extent of the Due Process Clause's reach into Guantanamo Bay, I concur in the denial of initial hearing en banc.

The tightrope walk performed by both parties in the briefing on this petition well illustrates the dilemma. Petitioner apparently recognizes that our cases do "not preclude extension of the Due Process Clause to Guantánamo." Pet. 13. Perhaps recognizing that this position is unlikely to win him an initial hearing en banc, he adds that there is "obvious confusion" on the issue among the "various opinions and statements by judges of this Circuit." *Id.* at 16. On the other side, the government thinks there is no work for a panel to do because this court has "clearly and repeatedly answered" the question by holding that due process is unavailable at Guantanamo, Opp. 7, but nonetheless takes the position that initial en banc review is inappropriate, *id.* at 7–8.

The government traces its insistence that this circuit has resolved the question to *Kiyemba v. Obama* (*Kiyemba I*), 555 F.3d 1022, 1026–27 (D.C. Cir. 2009), *vacated*, 559 U.S. 131 (2010) (per curiam), *reinstated in relevant part*, 605 F.3d 1046 (D.C. Cir. 2010) (per curiam). *See* Opp. 7; *see also Ali v. Trump*, 317 F. Supp. 3d 480, 488 (D.D.C. 2018) (reading *Kiyemba I* to answer the question). But as I read the opinion in *Kiyemba I*, that case neither implicated the right to procedural due process nor decided whether its protections reach Guantanamo.

In *Kiyemba I*, all agreed that the detainees in question should be released. 555 F.3d at 1024. The only question was where. *See id.* Granting the detainees habeas relief, the district court ordered the government to release them into the United States. *Id.* We reversed, *id.* at 1032, explaining that the Constitution committed the question in that case—concerning who may enter the United States—to the political branches, *see id.* at 1026 ("As a result, it 'is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien.'" (quoting *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950))).

Along the way, however, the *Kiyemba I* court addressed the district court's notion that "some 'constitutional imperative'" protecting "'the fundamental right of liberty'" authorized the release order. *Id.* (quoting *In re Guantanamo Bay Detainee Litigation*, 581 F. Supp. 2d 33, 34, 43 (D.D.C. 2008)). These phrases, according to the court, "suggest[ed] that the [district] court may have had the Fifth Amendment's due process clause in mind." *Id.* "But the due process clause," the *Kiyemba I* court explained, "cannot support the court's order of release" because "[d]ecisions of the Supreme Court and of this court . . . hold that the due process clause does not apply to aliens without property or presence in the sovereign territory of the United States." *Id.* The court consigned to a footnote the remaining piece of the syllogism, stating that "[t]he Guantanamo Naval Base is not part of the sovereign territory of the United States." *Id.* at 1026 n.9.

In my view, *Kiyemba I* did not resolve whether the Fifth Amendment affords detainees any procedural due process protections. The *Kiyemba I* court addressed only one theory of how the Due Process Clause might reach Guantanamo. When the court said that the line of cases constraining the clause to

sovereign U.S. territory barred the requested relief, *see id.* at 1026 & n.9, it never contemplated—because nobody raised— whether a successful theory might find support in *Boumediene v. Bush*, 553 U.S. 723 (2008), the Supreme Court's pathmarking decision issued just eight months earlier. In that case, the Court questioned the "argument that, at least as applied to noncitizens, the Constitution necessarily stops where *de jure* sovereignty ends," *id.* at 755, and went on to explain "that questions of extraterritoriality turn on objective factors and practical concerns, not formalism," *id.* at 764. *Accord Al Bahlul v. United States*, 767 F.3d 1, 65 n.3 (D.C. Cir. 2014) (Kavanaugh, J., concurring in the judgment in part and dissenting in part) (reading *Boumediene* to "require[] a 'functional' rather than 'formalistic' analysis" to determine whether a "particular constitutional provision" applies to "non-U.S. citizens in U.S. territories").

The *Kiyemba I* court, moreover, did not explain whether it was referring to the right to substantive due process or to the right at issue here, the right to procedural due process. *Cf. County of Sacramento v. Lewis*, 523 U.S. 833, 845–46 (1998) (due process both requires "fundamental procedural fairness" and "protects against government power arbitrarily and oppressively exercised"). Context, however, indicates that the court was referring to the right to substantive due process. The relevant passage in *Kiyemba I* refuted the premise that a "fundamental right of liberty" required the government to release the detainees onto United States soil. *Id.* at 1026 (internal quotation marks omitted). That hardly sounds like a procedural protection. *See Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (recognizing that substantive due process is concerned with "fundamental liberty interest[s]"). Indeed, the relevant dispute in *Kiyemba I* concerned only whether the law gave the detainees a substantive right to enter the United States. The detainees asserted no procedural due process rights, *see*

555 F.3d at 1024, and we should not lightly read our opinions to sweep far beyond the facts of a given case. *See American Federation of Musicians v. FCC*, 356 F.2d 827, 830 (D.C. Cir. 1966) ("[T]he judicial function is best served, we believe, when appellate decision, after appropriate review, is limited to only those questions necessary to decide the case . . . ."). And although this court has occasionally restated *Kiyemba I*'s holding, *see, e.g.*, *Bahlul v. United States*, 840 F.3d 757, 796 (D.C. Cir. 2016) (en banc), it has never purported to expand the original opinion's ambit.

This limited understanding of *Kiyemba I* helps explain why subsequent panels of this court have demurred from reading the case to resolve, for all time, the due process rights of Guantanamo detainees. For example, in *Rasul v. Myers*, issued just two months after *Kiyemba I*, the court, including the two members of the *Kiyemba I* majority, declined to "decide whether *Boumediene* portends application of the Due Process Clause . . . to Guantanamo detainees." 563 F.3d 527, 529 (D.C. Cir. 2009) (per curiam). Similarly, in *Al-Madhwani v. Obama*, we avoided deciding whether *Kiyemba I* foreclosed any due process rights by "assuming [the detainee] had a constitutional right to due process." 642 F.3d 1071, 1077 (D.C. Cir. 2011). If *Kiyemba I* had actually decided that territorial sovereignty offers the only possible basis for extending any due process protections, then *Rasul* and *Al-Madhwani* would have had no reason to avoid the question.

Ali's argument that the Due Process Clause has something to say about the length of his confinement is serious—and deserves to be taken seriously. The detentions at Guantanamo Bay, which the government tells us may last at least until the hostilities authorized in 2001 abate, are lengthening into decades, with no end in sight. This situation requires this court's careful consideration. But because it should be

considered first by a panel, I concur in the denial of initial hearing en banc.