# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued January 15, 2019         Decided June 21, 2019

No. 18-5148

KHALID AHMED QASSIM,
APPELLANT

v.

DONALD J. TRUMP, PRESIDENT OF THE UNITED STATES, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:04-cv-01194)

*Thomas B. Wilner* argued the cause for appellant. With him on the briefs were *Neil H. Koslowe*, *Kimberly Ferguson*, and *Anthony G. Amsterdam*.

*Joseph Margulies* was on the brief for *amicus curiae* Commonwealth Lawyers Association in support of appellant.

*Brad Hinshelwood*, Attorney, U.S. Department of Justice, argued the cause for appellees. With him on the brief were *Sharon Swingle* and *Michael Shih*.

Before: MILLETT and PILLARD, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* MILLETT.

MILLETT, *Circuit Judge*: Khalid Ahmed Qassim, who has been held at the Guantanamo Bay Naval Base in Cuba for seventeen years, appeals the district court's denial of his petition for a writ of habeas corpus. On appeal, Qassim presses a due process challenge to the government's use of undisclosed classified information as a basis for his detention. In denying Qassim's motion *in limine* concerning the use of undisclosed information, the district court ruled that, as an alien Guantanamo detainee, Qassim has no rights under the Fifth Amendment's Due Process Clause. In so ruling, the district court relied on this court's 2009 decision in *Kiyemba v. Obama*, 555 F.3d 1022 (D.C. Cir. 2009), *vacated*, 559 U.S. 131, *and judgment reinstated as amended*, 605 F.3d 1046 (D.C. Cir. 2010).

The district court's ruling that binding circuit precedent denies Qassim all rights to due process was in error. *Kiyemba* did not so hold. That decision ruled only that the Due Process Clause does not invest detainees who have already been granted habeas corpus with a substantive due process right to be released into the United States. That decision did not decide, or have any occasion to address, what constitutional procedural protections apply to the litigation of a detainee's habeas corpus petition in the first instance. Nor has any other decision of this circuit adopted a categorical prohibition on affording detainees seeking habeas relief any constitutional procedural protections. The governing law, in fact, is that Qassim and other alien detainees must be afforded a habeas process that ensures "meaningful review" of their detention. *Boumediene v. Bush*, 553 U.S. 723, 783 (2008).

Beyond that, resolution of Qassim's specific due process challenge to the government's withholding of classified

information would be premature precisely because the parties and the district court operated under a faulty understanding of circuit precedent. We instead are constrained to remand the case for further proceedings to be conducted within the correct legal framework and to develop the needed factual record. *Pullman-Standard v. Swint*, 456 U.S. 273, 291 (1982) ("When an appellate court discerns that a district court has failed to make a finding because of an erroneous view of the law, the usual rule is that there should be a remand for further proceedings to permit the trial court to make the missing findings."). As it now stands, the record is insufficient for this court to resolve Qassim's constitutional challenge. *Cf. Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 66 (1993). We leave it for the district court to address on remand both Qassim's claimed constitutional right to access the classified information in the government's hands and the constitutional source (if any) of such a right. In so doing, the district court can also address the government's belated concession, made for the first time on appeal, that some of the sought-after information may properly be disclosed in this case.

**I**

**A**

In response to the terrorist attacks against the United States perpetrated on September 11, 2001, Congress enacted the Authorization for Use of Military Force, Pub. L. No. 107-40, 115 Stat. 224 (2001). That law authorizes the President "to use all necessary and appropriate force against those nations, organizations, or persons he determines planned, authorized, committed, or aided the terrorist attacks that occurred on September 11, 2001." Pub. L. No. 107-40, § 2(a), 115 Stat. 224, 244. That authority includes detaining "those who are part of forces associated with Al Qaeda or the Taliban[.]" *Al-*

*Madhwani v. Obama*, 642 F.3d 1071, 1074 (D.C. Cir. 2011) (quoting *Al–Bihani v. Obama*, 590 F.3d 866, 872 (D.C. Cir. 2010)).

Petitioner Qassim is a Yemeni citizen. In 1999, he was recruited by a known al Qaeda and Taliban recruiter to travel from Yemen to Afghanistan for military-style training. He traveled to Afghanistan and twice received training at the al Qaeda-run Al-Farouq training camp.[1]

In October 2001, when the United States began bombing Afghanistan in response to the September 11th attacks, Qassim was on the front lines with the Taliban near Bagram, Afghanistan. After the front lines broke, Qassim retreated to an al Qaeda-affiliated guest house and then to the Tora Bora region, a cave complex in the mountains of Eastern Afghanistan. Qassim spent twenty days in Tora Bora and was present for a nighttime visit from Osama bin Laden.

Qassim was arrested by Afghan police, who handed him over to United States authorities in December 2001. Qassim's name was later found during raids of al Qaeda safehouses and an al Qaeda residence in Pakistan. On May 1, 2002, the United States moved Qassim to its detention facility at Guantanamo Bay, where he has remained.

**B**

Shortly after the Supreme Court held in *Rasul v. Bush*, 542 U.S. 466 (2004), that the federal habeas statute, 28 U.S.C.

---

[1] This factual background is drawn from the joint stipulation of facts between the parties. Qassim has conceded these facts for purposes of this appeal only, and has reserved the right to contest them in subsequent proceedings.

§ 2241 (2004), applies to foreign detainees held at Guantanamo Bay, *id.* at 481, Qassim filed a petition for habeas corpus in the United States District Court for the District of Columbia.

Qassim's habeas case has a long and winding history. While Qassim's habeas petition was pending in district court, Congress enacted the Detainee Treatment Act of 2005, Pub. L. No. 109-148, 119 Stat. 2739. That statute purported to deprive the federal courts of jurisdiction over habeas cases brought by aliens detained at Guantanamo Bay. *See* Pub. L. No. 109-148 § 1005(e)(1), 119 Stat. 2739, 2742. A year later, the Supreme Court held that the Detainee Treatment Act did not deprive federal courts of jurisdiction over habeas petitions that, like Qassim's, were already pending at the time the law was enacted. *See Hamdan v. Rumsfeld*, 548 U.S. 557, 575–578 (2006).

Congress then passed the Military Commissions Act of 2006, which purported to strip the federal courts of jurisdiction over pending habeas cases from detainees at Guantanamo Bay. Pub. L. No. 109-366, 120 Stat. 2600. In *Boumediene v. Bush*, the Supreme Court invalidated a section of the Military Commissions Act as an unconstitutional suspension of the writ of habeas corpus, and held that the privilege of habeas corpus entitles detainees to a "meaningful opportunity" for review, 553 U.S. at 771, 779, 783.

In the wake of *Boumediene*, Qassim and the government agreed to indefinitely stay his case while the standards and procedures for litigating Guantanamo habeas cases were worked out in other pending cases.

And so Qassim waited. And waited. For eight years, his case remained in limbo. Finally, in February 2017, Qassim attempted to spur action on his case by moving for the entry of

final judgment without factual findings. In Qassim's view, this court's precedent preordained the denial of his habeas petition, so he asked the district court to enter judgment in an effort to obtain *en banc* or Supreme Court review overturning that precedent.

The district court denied the motion, reasoning that factual findings needed to be made before final judgment could be entered and the case could proceed to appellate review. Recognizing Qassim's desire to proceed expeditiously to appeal, the district court advised the parties to propose a procedure that would allow for a prompt disposition of the case on the basis of a sufficient factual record.

Qassim then proposed to the government pre-trial and trial procedures that, among other things, would allow for the disclosure of classified materials to his counsel and for the sharing with Qassim of an "adequate substitute" for such materials. Supp. App'x 38. Under Qassim's plan, the government would be unable to rely on any information that had not been disclosed to justify Qassim's detention.

The government rejected Qassim's proposal, suggesting instead that the parties proceed by way of a stipulated factual record. Under the government's framework, the parties' stipulations would allow the district court to "make findings of fact and conclusions of law," while still preserving Qassim's right to appeal certain aspects of a case management order and a protective order that the district court issued in 2008 to establish procedures for the adjudication of Guantanamo Bay habeas corpus petitions. Supp. App'x 64–65.

Qassim acquiesced to the government's proposal on the condition that his right to assert a due process claim would be preserved for appeal. Public J.A. 27–28; *see also* Supp. App'x

48 (email explaining government's view that the parties should adopt a procedure that preserved the issues Qassim wished to challenge on appeal without having to relitigate in district court pertinent circuit decisions and the procedures governing Guantanamo habeas cases).[2]

In the face of a series of district court rulings holding that the *Kiyemba* ruling categorically denied Guantanamo Bay detainees the protections of the Due Process Clause, Qassim filed a motion *in limine*.[3] In that motion, he asked the district court to resolve his habeas petition "without regard to the premise that 'the due process clause does not apply to aliens

---

[2] At every step of this litigation, Qassim reserved his right to raise on appeal his claim that he is entitled to procedural due process in his habeas proceedings. *See, e.g.*, Motion for Entry of Judgment 2–3, Dkt. 1093 (explaining intention to challenge due process language in *Kiyemba en banc* and, if necessary, at the Supreme Court); Motion *in Limine* 4, Unclass. J.A. 425 (arguing that "Guantanamo detainees are entitled to the procedural protections of the Due Process Clause in petitioning for *habeas corpus* relief"); *id.* at 6, Unclass. J.A. 427 n.1 (noting "that some of the evidence upon which the government relies to support its ongoing detention of [Qassim] consists of documents that are redacted in part or in full, which have not been seen or read by Qassim or his counsel," and arguing that "[d]ue process requires a timely disclosure of all the evidence against Qassim and a fair opportunity to challenge and rebut such evidence"); Prehearing Br. 5, Supp. App'x 79 (arguing that "Guantanamo Detainees Are Entitled to Due Process"); District Ct. Tr. 4, Public J.A. 4 (arguing that "Mr. Qassim is entitled to the protections of the due process clause").

[3] *See, e.g.*, *Rabbani v. Obama*, 76 F. Supp. 3d 21, 25 (D.D.C. 2014); *Ameziane v. Obama*, 58 F. Supp. 3d 99, 103 n.2 (D.D.C. 2014); *Bostan v. Obama*, 674 F. Supp. 2d 9, 29 (D.D.C. 2009); *Salahi v. Obama*, No. 05-0569 (RCL), 2015 WL 9216557, at *5 (D.D.C. Dec. 17, 2015).

without property or presence in the sovereign territory of the United States.' (*Kiyemba v. Obama*, 555 F.3d [at] 1026[)].” Unclass. J.A. 423.  In addition, Qassim asked the district court not to rely on any evidence “that was not provided in advance and in writing to [him] [and] * * * that was not accompanied by the full disclosure of all information in the government’s possession bearing on the weight, provenance, and accuracy of the evidence claimed to justify petitioner’s detention[.]” Unclass. J.A. 423.

The district court denied the motion *in limine*, reading this court’s decision in *Kiyemba* as establishing that Qassim had no right to due process.  *See* Public J.A. 18–19.  The district court then entered final judgment based on the parties’ stipulated facts and denied Qassim’s habeas petition.  Included in those stipulations was a reiteration of Qassim’s objection to the application of *Kiyemba* to deny him due process protections, and a reservation of his right to challenge that decision on appeal.  *See* Public J.A. 28.  Qassim filed a timely notice of appeal.

## II

Qassim argues on appeal that denying him or his attorneys access to the classified evidence that the government is using to detain him violates the Due Process Clause of the Fifth Amendment, and that this court should recognize due process protections for Guantanamo Bay habeas petitioners.

Although we cannot accept either proposition on the record before us, we agree with Qassim that his case has thus far been adjudicated within an erroneous legal framework.  The district court should not have applied *Kiyemba* as a categorical bar on constitutional procedural protections in habeas litigation for foreign detainees at Guantanamo Bay.  Because that flawed

premise on which this case was litigated prevented the district court from developing the concrete record necessary for resolution of the particular evidentiary due process question that Qassim presses, we remand for the district court to consider in the first instance whether and how the Due Process Clause applies to Qassim's request that he or his counsel be allowed to see classified information relevant to his detention.

## A

The district court's denial of Qassim's motion *in limine* and the entry of judgment against Qassim were both predicated on that court's conclusion that *Kiyemba* firmly closed the door on procedural due process claims for Guantanamo Bay detainees. That was error.

*Kiyemba* neither presented nor decided the question of whether Guantanamo detainees enjoy procedural due process protections under the Fifth Amendment (or any other constitutional source, *see, e.g.*, Suspension Clause, U.S. Const. Art. I, § 9, cl. 2) in adjudicating their habeas petitions. In fact, *Kiyemba* was not about the procedures for litigating habeas petitions *at all*. In *Kiyemba*, the central habeas question of the government's authority to detain the petitioners had already been resolved. The government conceded that the *Kiyemba* detainees, who were Chinese Uighurs, could not lawfully be held as enemy combatants. 555 F.3d at 1024. For that reason, the question of what procedural protections apply in the habeas process, including whether there is any right to confront the government's evidence, was not before the *Kiyemba* court in any way, shape, or form. *See generally Kiyemba*, 555 F.3d 1022.

Instead, the issue on appeal in *Kiyemba* was the narrow question of what remedy could be given once the government

conceded that it could not lawfully hold those detainees. Specifically, because Kiyemba and his fellow petitioners argued that they could not be returned to their country of origin due to a fear of torture or execution, *Kiyemba*, 555 F.3d at 1024, the district court had ordered the detainees released into the United States, citing the need to protect the "fundamental right of liberty[,]" *id.* at 1026 (internal quotation marks omitted). The federal government opposed that remedy. And that substantive due process claim concerning the scope of the habeas remedy is the only Due Process Clause issue that *Kiyemba* resolved. *See id.* (holding that "the due process clause cannot support the court's *order of release*") (emphasis added); *id.* at 1029 ("The question here is not whether petitioners should be released, but where."); *id.* at 1028 ("[T]he decision whether to allow an alien to enter the country [i]s for the political departments, not the Judiciary.") (citing *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537 (1950), and *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953)); *see also Ali v. Trump*, No. 18-5297, 2019 WL 850757, at *2 (D.C. Cir. Feb. 22, 2019) (Tatel, J., concurring in denial of *en banc* review) ("Context * * * indicates that the [*Kiyemba*] court was referring to the right to substantive due process.").

Nor could *Kiyemba* have slammed the door on the Constitution's procedural protections for Guantanamo Bay detainees in the adjudication of their habeas petitions. The Supreme Court's decision in *Boumediene* was explicit that detainees must be afforded those "procedural protections" necessary (i) to "rebut the factual basis for the Government's assertion that he is an enemy combatant," 553 U.S. at 783; (ii) to give the prisoner "a meaningful opportunity to demonstrate that he is being held pursuant to the erroneous application or interpretation of relevant law," *id*. at 779 (internal quotation marks and citation omitted); and (iii) to create a record that will support "meaningful review" by the district court, *id*. at 783.

In so holding, the Supreme Court pointed to both the Constitution's guarantee of habeas corpus, U.S. Const., Art. I, § 9, cl. 2; *see Boumediene*, 553 U.S. at 771–792, and the procedural protections of the Due Process Clause, *id.* at 781 (scope of habeas review "accords with our test for procedural adequacy in the due process context"); *id*. at 785 (reserving issue of whether statutory procedures "satisfy due process standards").

To be fair to the district court, *Kiyemba* did say at one point that "the due process clause does not apply to aliens without property or presence in the sovereign territory of the United States." 555 F.3d at 1026.[4] But the purely remedial context of that statement necessarily cabined its reach. After all, federal courts have no license to provide advisory opinions on issues that are not presented by the case before them. *See Flast v. Cohen*, 392 U.S. 83, 96 (1968) ("[T]he oldest and most consistent thread in the federal law of justiciability is that the federal courts will not give advisory opinions.") (internal quotation marks omitted); *Public Serv. Elec. & Gas Co. v. FERC*, 783 F.3d 1270, 1274 (D.C. Cir. 2015) (same).[5]

---

[4] This statement has been read broadly by numerous district court judges. *See supra* n.3; *Ali v. Trump*, 317 F. Supp. 3d 480, 488 (D.D.C. 2018).

[5] The Supreme Court citations that *Kiyemba* pointed to in making its statement about the application of the Due Process Clause to aliens likewise confirm that the decision was not addressing the procedural protections due in habeas corpus proceedings. *See Kiyemba*, 555 F.3d at 1026–1027 (citing *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (portion cited by *Kiyemba* addresses the immigration power to exclude aliens from entering the United States); *Johnson v. Eisentrager*, 339 U.S. 763, 783–784 (1950) (portion cited in *Kiyemba* holds that enemy aliens engaged in hostile action against the United States have no immunity from military

Doubly so when deciding constitutional questions. "[C]ourts must choose the narrowest constitutional path to decision." *Association of American Railroads v. United States Dep't of Transp.*, 896 F.3d 539, 544 (D.C. Cir. 2018); *see Golden v. Zwickler*, 394 U.S. 103, 108 (1969) ("For adjudication of constitutional issues[,] concrete legal issues, presented in actual cases, not abstractions are requisite.") (internal quotation marks omitted); *see also Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 217 (1995) (courts are obligated to resolve cases, when possible, on "the narrower ground for adjudication of the constitutional question[ ] in the case"); *Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) (courts should not "formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied") (internal quotation marks omitted).

Tellingly, no subsequent decision of this court has read *Kiyemba* as walling off Guantanamo Bay detainees from all constitutional procedural protections. *See Aamer v. Obama*, 742 F.3d 1023, 1039 (D.C. Cir. 2014) ("assum[ing] without deciding that the constitutional right to be free from unwanted medical treatment extends to nonresident aliens detained at Guantanamo"); *Al-Madhwani v. Obama*, 642 F.3d 1071, 1077 (D.C. Cir. 2011) (assuming the detainee had a constitutional right to due process and the district court violated it, but concluding that "such error would be harmless") (quotation marks omitted); *Rasul v. Myers*, 563 F.3d 527, 529 (D.C. Cir. 2009) (declining to "decide whether *Boumediene* portends

---

trial); and *United States v. Verdugo-Urquidez*, 494 U.S. 259, 269, 274–275 (1990) (portions cited by *Kiyemba* hold that Fourth Amendment protections do not apply extraterritorially to a search conducted within a foreign country of property belonging to a foreign citizen with no voluntary connection to the United States)).

application of the Due Process Clause and the Cruel and Unusual Punishment Clause to Guantanamo detainees"); *Kiyemba v. Obama* ("*Kiyemba II*"), 561 F.3d 509, 514 n.4 (D.C. Cir. 2009) (assuming without deciding that Guantanamo detainees possessed substantive due process rights in transfers to foreign countries). We would not have repeatedly reserved such Due Process Clause questions if they had already been conclusively answered in *Kiyemba*.

That is all a long way of saying that this court's decision in *Kiyemba* did not answer a question that was never asked. Circuit precedent leaves open and unresolved the question of what constitutional procedural protections apply to the adjudication of detainee habeas corpus petitions, and where those rights are housed in the Constitution (the Fifth Amendment's Due Process Clause, the Suspension Clause, both, or elsewhere).

**B**

Qassim argues that the Due Process Clause applies to him and requires that he and his counsel be afforded access to classified information underlying the government's decision to detain him so that Qassim can confront and challenge it in his habeas petition.

Under long-established principles of constitutional avoidance, courts must "avoid the premature adjudication of constitutional questions" and "not * * * pass on questions of constitutionality * * * unless such adjudication is unavoidable[.]" *Matal v. Tam*, 137 S. Ct. 1744, 1755 (2017); *see Clinton v. Jones*, 520 U.S. 681, 690 n.11 (1997) (courts will not "decide any constitutional question in advance of the necessity for its decision[,] * * * formulate a rule of constitutional law broader than is required by the precise facts

to which it is to be applied[,] * * * [or] decide any constitutional question except with reference to the particular facts to which it is to be applied[.]"); *Ashwander*, 297 U.S. at 346–347 (Brandeis, J., concurring) ("The Court will not anticipate a question of constitutional law in advance of the necessity of deciding it," or "decide questions of a constitutional nature unless absolutely necessary to a decision of the case.") (internal quotation marks and citations omitted).

The rule against the "premature adjudication of constitutional questions," *Matal*, 137 S. Ct. at 1755, counsels strongly against resolving such issues without an "adequate and full-bodied record," *Kleppe v. New Mexico*, 426 U.S. 529, 546 (1976) (internal quotation marks omitted), and the "clarity needed for effective adjudication," *Socialist Labor Party v. Gilligan*, 406 U.S. 583, 588 n.2 (1972).

Qassim's quest to see the classified information underlying his detention falls squarely within the category of premature constitutional questions. The case management order and protective order entered in this case provide a mechanism for the exchange of classified information. For example, the case management order creates a presumption that the government will turn over to the petitioner's security-cleared counsel all reasonably available exculpatory evidence in its possession and, on request, all documents used to justify the petitioner's detention, unless the government moves for an exception to withhold particular classified documents. *See* Amended Case Management Order 2–3, Unclass. J.A. 415–416. While the protective order generally prevents detainees themselves from reviewing the classified information, Qassim's counsel has the right to request that information be declassified or, according to the government, to share that information with Qassim either with the government's "prior concurrence" or the court's "express permission." Gov. Br. 10.

The parties invoked none of those discovery procedures. Instead, operating under the premise that *Kiyemba* disentitled Qassim to constitutional due process, judgment was entered based on a factual record that expressly preserved the due process question for review. *See, e.g.*, Factual Stipulations 2–3, Public J.A. 27–28 (citing *Kiyemba* for the proposition that "the due process clause does not apply to aliens detained at Guantanamo Bay," noting Qassim's view that this case was wrongly decided, and reserving Qassim's right to challenge it); *see also, e.g.*, Supp. App'x 48 (email setting out government's view that parties should proceed by way of factual stipulations while still allowing Qassim to reserve rights for appeal).

As a result, the parties never tested the disclosure procedures in the case management and protective orders. Complicating matters further, the government has advised for the first time on appeal that, were Qassim to pursue the available procedures, he might "receive[] most or all of the information to which he * * * claims due process entitles him." Gov. Br. 14. Of course, we would have expected the government to have told Qassim and the district court that before proposing that the parties set up an appeal to this court based on an incomplete record.[6]

---

[6] The government claims that it did not rely on anything contained in the classified material to justify Qassim's detention. But that is hardly the end of the legal question. Neither Qassim nor the court are bound to take the government's word for it. *See Al Odah v. United States*, 559 F.3d 539, 544–548 (D.C. Cir. 2009) (describing process for *ex parte* review of classified evidence *by the court*); *Parhat v. Gates*, 532 F.3d 834, 847–848 (D.C. Cir. 2008) (courts must have the ability in habeas cases to examine independently the reliability of record evidence). In any event, Qassim asserts a right to see materially *exculpatory* information in the government's records, as well as information that could provide

16

But that is water under the bridge. What matters for present purposes is that, unless and until specific discovery requests are made and ruled upon, it is impossible at this juncture for this court to determine (i) which information would be disclosed under the district court's case management order and the government's newly found optimism on appeal about available disclosures; (ii) whether any information that might be withheld even implicates possible constitutional disclosure obligations, *cf. Gagnon v. Scarpelli*, 411 U.S. 778 (1973); *Morrissey v. Brewer*, 408 U.S. 471 (1972); *Brady v. Maryland*, 373 U.S. 83 (1963); or (iii) what the consequences of extending constitutional procedural rights to alien detainees at Guantanamo Bay would be—that is, what balance would be struck between the government's potential justifications for any withholdings and Qassim's and his counsel's need to see the material to meaningfully litigate his habeas petition, *cf. Boumediene*, 553 U.S. at 766–771 (engaging in a context-specific examination of the consequences of extending habeas corpus processes to alien detainees at Guantanamo). In other words, in its present posture, resolution of the constitutional question presented would be premature.

To be sure, following the district court's procedures and litigating any discovery disputes might not give Qassim all of the information to which he believes he is entitled. Still, allowing for the discovery process to take its ordinary course and for a factual record to be developed would narrow and

---

important context for the materials on which the government or the court might rely. *See* Unclass. J.A. 423, 426. Because neither we nor the district court have seen this classified information, we cannot blindly hold that the government's failure to disclose it was harmless. *See United States v. Dorman*, 860 F.3d 675, 685 (D.C. Cir. 2017) (noting that the government bears the burden of proving harmless error).

frame the constitutional question presented, providing the crystallization and "clarity needed for effective adjudication." *Socialist Labor Party*, 406 U.S. at 588 n.2.

Without a decision from the district court addressing the constitutional question in the particular context of a concrete discovery dispute, it would be "premature," *Matal*, 137 S. Ct. at 1755, for us to resolve Qassim's due process claim, *see, e.g.*, *United States v. Byers*, 740 F.2d 1104, 1128 n.31 (D.C. Cir. 1984) ("[T]he well-entrenched rule is that courts will not resolve constitutional issues on a deficient record.").

Accordingly, we reverse and remand to the district court. *See, e.g.*, *Brown v. Plaut*, 131 F.3d 163 (D.C. Cir. 1997) (remanding so district court could develop clear record of exact process afforded to appellant). On remand, the district court will be free to modify the procedures set out in the case management order as necessary to facilitate resolution of the constitutional questions raised in this case. *See Barhoumi v. Obama*, 609 F.3d 416, 421 (D.C. Cir. 2010) ("Although the cases [the detainee] cites hold that *parties* have a duty to comply with case management orders, he cites no authority for the proposition that *judges* are required to follow their own * * * case management order[s].").

* * * * *

For the foregoing reasons, the district court's judgment denying Qassim's habeas petition is reversed and the case is remanded for further proceedings consistent with the opinion of this court.

*So ordered.*