# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued December 11, 2019        Decided May 15, 2020

No. 18-5297

ABDUL RAZAK ALI, DETAINEE,
APPELLANT

v.

DONALD J. TRUMP, PRESIDENT OF THE UNITED STATES, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:10-cv-01020)

*Shayana D. Kadidal* argued the cause for appellant. With him on the briefs were *J. Wells Dixon*, *Pardiss Kebriaei*, *Baher Azmy*, and *H. Candace Gorman*.

*Anil Vassanji* was on the brief for *amicus curiae* Professor Eric Janus in support of petitioner-appellant.

*Thomas Anthony Durkin* and *George M. Clarke III* were on the brief for *amici curiae* Tofiq Nasser Awad Al Bihani (ISN 893) and *Abdul Latif Nasser* (ISN 244) supporting appellant.

*Brian E. Foster* was on the brief for *amicus curiae* Human Rights First in support of petitioner-appellant.

*Sharon Swingle*, Attorney, U.S. Department of Justice, argued the cause for appellees. With her on the brief were *Hashim M. Mooppan*, Deputy Assistant Attorney General, and *Michael Shih*, Attorney. *Sonia M. Carson*, Attorney, entered an appearance.

Before: ROGERS and MILLETT, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* MILLETT.

Opinion concurring in the judgment filed by *Senior Circuit Judge* RANDOLPH.

MILLETT, *Circuit Judge*: The United States has detained appellant Abdul Razak Ali, an Algerian national, at the Guantanamo Bay Naval Base in Cuba since June 2002. In this appeal, Ali asks the court to hold that the Fifth Amendment's Due Process Clause categorically applies in full to detainees at Guantanamo Bay, and that his ongoing detention violates both the procedural and substantive aspects of the Due Process Clause. Those broad arguments are foreclosed by circuit precedent. To be sure, whether and which particular aspects of the Due Process Clause apply to detainees at Guantanamo Bay largely remain open questions in this circuit. So too does the question of what procedural protections the Suspension Clause requires. But Ali has eschewed any such calibrated or as-applied constitutional arguments in this case. For those reasons, the district court's denial of Ali's petition for a writ of habeas corpus is affirmed.

# I

## A

Shortly after the September 11, 2001 terrorist attacks, Congress passed the Authorization for Use of Military Force ("AUMF"), Pub. L. No. 107-40, 115 Stat. 224 (2001). That law empowers the President "to use all necessary and appropriate force against those nations, organizations, or persons he determines planned, authorized, committed, or aided the terrorist attacks that occurred on September 11, 2001[.]" *Id.* § 2(a), 115 Stat. at 224. This includes the detention of "those who are part of forces associated with Al Qaeda or the Taliban[.]" *Al-Madhwani v. Obama*, 642 F.3d 1071, 1073–1074 (D.C. Cir. 2011) (quoting *Al-Bihani v. Obama*, 590 F.3d 866, 872 (D.C. Cir. 2010)); *see also Hamdi v. Rumsfeld*, 542 U.S. 507, 516, 518–519 (2004) (plurality opinion).

Congress subsequently passed the National Defense Authorization Act for Fiscal Year 2012, Pub. L. No. 112-81, 125 Stat. 1298 (2011). That Act "affirms that the authority of the President to use all necessary and appropriate force pursuant to the [AUMF] includes the authority for the Armed Forces of the United States to detain covered persons" until "the end of the hostilities authorized by the [AUMF]." *Id.* § 1021(a), (c)(1), 125 Stat. at 1562. The National Defense Authorization Act defines "covered persons" to include those "who planned, authorized, committed, or aided the terrorist attacks that occurred on September 11, 2001, or harbored those responsible for those attacks," or who were "part of or substantially supported al-Qaeda, the Taliban, or associated forces that are engaged in hostilities against the United States or its coalition partners[.]" *Id.* § 1021(b), 125 Stat. at 1562.

**B**

Ali is an Algerian citizen. He was captured by United States and Pakistani forces in March 2002 during a raid of a four-bedroom guesthouse in Faisalabad, Pakistan. *Ali v. Obama (Ali II)*, 736 F.3d 542, 543 (D.C. Cir. 2013). Ali kept troubling company there. At the time of the raid, he was living with the al Qaeda facilitator Abu Zubaydah and several of Zubaydah's compatriots, including "four former trainers from a terrorist training camp in Afghanistan, multiple experts in explosives, and an individual who had fought alongside the Taliban." *Id.* The guesthouse also contained "a device typically used to assemble remote bombing devices" and "documents bearing the designation 'al Qaeda[.]'" *Id.*

In June 2002, the United States transferred Ali to the Naval Base at Guantanamo Bay. *Ali II*, 736 F.3d at 543. A few years later, Ali filed a petition for habeas corpus in the United States District Court for the District of Columbia challenging his designation and detention as an enemy combatant. *Ali v. Obama (Ali I)*, 741 F. Supp. 2d 19, 21 (D.D.C. 2011). The district court denied the petition. *Id.* at 27. Applying a preponderance of the evidence standard, the district court concluded that Ali was a member of Zubaydah's forces, which the district court found was an "associated force" of al Qaeda and the Taliban within the meaning of the AUMF. *Id.* at 25, 27; *see also* Pub. L. No. 107-40, § 2(a), 115 Stat. at 224. The district court further found that Ali's capture in the same guesthouse as Zubaydah, combined with evidence that Ali was taking English lessons through one of Zubaydah's training programs while there, was enough to establish his membership in that force. *Ali I*, 741 F. Supp. 2d at 25–26. The court also credited government evidence "placing [Ali] with Abu Zubaydah's force in various places in Afghanistan prior to his stay at the Faisalabad guesthouse." *Id.* at 26. And Ali's

membership in Zubaydah's force was "corroborated further by [his] own admission—when he was first interrogated—that he had gone to Afghanistan to fight in the jihad against the U.S. and its Allied forces." *Id.*

This court affirmed, concluding that Ali's presence in the "terrorist guesthouse" alongside other terrorist combatants strongly supported the district court's finding that he was an enemy combatant. *Ali II*, 736 F.3d at 545–546. Among other things, Ali's presence in the company of senior leaders of Zubaydah's force, the duration of Ali's stay, his participation in English lessons while there, and the presence of documents and equipment associated with terrorist activity together provided weighty and substantial grounds for finding Ali to be an enemy combatant. *Id.* at 546.

On January 11, 2018, Ali joined several other Guantanamo detainees in filing renewed habeas petitions arguing that their continued detention violated the Due Process Clause and the AUMF. The district court subsequently denied Ali's habeas petition.

First, the district court held that detainees at Guantanamo Bay are not entitled to the protections of the Due Process Clause. The court also held that, even assuming the Due Process Clause applied, Ali's rights were not violated. The court reasoned that circuit precedent foreclosed Ali's procedural arguments that (1) the government must show by clear and convincing evidence that he remains a threat to national security, (2) government evidence is not entitled to a presumption of regularity, and (3) hearsay evidence should be inadmissible in AUMF detention proceedings. The court also rejected Ali's substantive due process argument that his continuing detention no longer served its ostensible purpose.

Second, the district court rejected Ali's argument that his continuing detention exceeds the scope of the AUMF. The district court read the AUMF to authorize the detention of enemy combatants until the hostilities authorized by that statute cease and found that hostilities against al Qaeda and the Taliban were ongoing.

Ali appealed, seeking initial consideration en banc. This court denied initial en banc review. *Ali v. Trump*, No. 18-5297, 2019 WL 850757 (D.C. Cir. Feb. 22, 2019).

**II**

We review the district court's factual determinations for clear error and its ultimate decision to grant or deny habeas relief *de novo*. *Latif v. Obama*, 677 F.3d 1175, 1178 (D.C. Cir. 2012); *see also Barhoumi v. Obama*, 609 F.3d 416, 423 (D.C. Cir. 2010).

**A**

The district court's decision that the Due Process Clause is categorically inapplicable to detainees at Guantanamo Bay was misplaced. *See Qassim v. Trump*, 927 F.3d 522, 524 (D.C. Cir. 2019). The Supreme Court's decision in *Boumediene v. Bush*, 553 U.S. 723 (2008), unequivocally held that Guantanamo Bay detainees must be afforded those procedures necessary to ensure "meaningful review" of the lawfulness of their detention, *id.* at 783. *See Qassim*, 927 F.3d at 524. In particular, detainees are constitutionally entitled to "those 'procedural protections'" that are "necessary (i) to 'rebut the factual basis for the Government's assertion that [the detainee] is an enemy combatant'; (ii) to give the prisoner 'a meaningful opportunity to demonstrate that he is being held pursuant to the erroneous application or interpretation of relevant law'; and

(iii) to create a record that will support 'meaningful review'" by federal courts. *Id.* at 528–529 (formatting modified) (quoting *Boumediene*, 553 U.S. at 779, 783).[1]

In identifying those constitutional protections for detainees, the Supreme Court pointed both to the Constitution's guarantee of habeas corpus, U.S. CONST. art. I, § 9, cl. 2 (commonly known as the Suspension Clause), and the Due Process Clause. *Boumediene*, 553 U.S. at 771–792; *see Qassim*, 927 F.3d at 529.

Circuit precedent has not yet comprehensively resolved which "constitutional procedural protections apply to the adjudication of detainee habeas corpus petitions," and whether those "rights are housed" in the Due Process Clause, the Suspension Clause, or both. *Qassim*, 927 F.3d at 530.

In this case, Ali has chosen not to ground any of his claims for procedural protections in the Suspension Clause. So that issue is not before us. Instead, Ali's main argument puts all of his eggs in one constitutional basket. He argues that the Due Process Clause's procedural and substantive requirements apply wholesale, without any qualifications, to habeas corpus petitions filed by all Guantanamo detainees. Ali Br. 12 ("The Due Process Clause [a]pplies at Guantánamo[.]"); *id.* 13–14 ("After *Boumediene*, it inescapably follows that the Due Process Clause also applies—in the same measure as the Suspension Clause—at Guantánamo to constrain certain executive branch actions."); *see also* Ali Reply 12–13; Oral

---

[1] This opinion's references to detainees at Guantanamo Bay and the constitutional protections they enjoy speaks only to foreign national detainees, who compose the Naval Base's current population in detention. We do not address what protections would apply to United States citizens or those with similar legal ties to the United States were they to be detained at Guantanamo Bay.

Arg. Tr. 4:6–12, 7:11–15, 13:5–7 (in seeking new procedural protections, counsel is "absolutely" "asking for a broader rule" than one that just resolves Ali's case); *id.* 20:2–21:6.[2]

That argument sweeps too far.

For starters, the argument is in substantial tension with the Supreme Court's more calibrated approach in *Boumediene*, which tied the constitutional protections afforded to Guantanamo Bay detainees' habeas corpus proceedings to their role in vindicating the constitutional right to the Great Writ and the judicial role in checking Executive Branch overreach. *See* 553 U.S. at 798 ("[P]etitioners may invoke the fundamental procedural protections of habeas corpus."); *id*. at 779–783, 793–795. The court stressed that the scope of constitutional protections must "turn on objective factors and practical concerns, not formalism." *Id.* at 764. Yet Ali argues for only a formal and unyielding line.

Ali's argument that the Due Process Clause's substantive protections apply with full force to all detainees at Guantanamo Bay also runs crosswise with this court's decision in *Kiyemba v. Obama*, which held that, for Guantanamo Bay detainees, the claimed substantive due process right to release into the United States had no purchase because a noncitizen who seeks admission to the United States generally "may not do so under any claim of right." 555 F.3d 1022, 1027 (D.C. Cir. 2009),

---

[2] Ali at one point briefly states that "at least some of the protections of the Due Process Clause must also reach Guantánamo because there are no practical barriers that would apply[.]" Ali Br. 13. He does not develop this argument, though, and we will not make new constitutional arguments for counsel. *See Government of Manitoba v. Bernhardt*, 923 F.3d 173, 179 (D.C. Cir. 2019) ("A party forfeits an argument by mentioning it only in the most skeletal way[.]") (formatting modified).

*vacated and remanded*, 559 U.S. 131, *reinstated in relevant part*, 605 F.3d 1046, 1047–1048 (D.C. Cir. 2010). That case refutes Ali's claim that the substantive protections of the Due Process Clause apply across the board to all Guantanamo Bay detainees. And Ali has abstained from pressing any more gradated or as-applied Due Process Clause argument here.

In sum, *Boumediene* and *Qassim* teach that the determination of what constitutional procedural protections govern the adjudication of habeas corpus petitions from Guantanamo detainees should be analyzed on an issue-by-issue basis, applying *Boumediene*'s functional approach. The type of sweeping and global application asserted by Ali fails to account for the unique context and balancing of interests that *Boumediene* requires when reviewing the detention of foreign nationals captured during ongoing hostilities.

**B**

To the extent that Ali focuses on particular categories of constitutional objections, the Due Process Clause is of no help to him. *See Association of American R.Rs. v. United States Dep't of Transp.*, 896 F.3d 539, 544 (D.C. Cir. 2018) ("[C]ourts must choose the narrowest constitutional path to decision.").

**1**

Ali argues that his continued detention for more than seventeen years violates substantive due process. While Ali's detention has been quite lengthy, under binding circuit precedent the Due Process Clause's substantive protections would offer him no help.

Among other things, the substantive component of the Due Process Clause "bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). But only government action that is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience" qualifies as arbitrary for the purposes of substantive due process. *Estate of Phillips v. District of Columbia*, 455 F.3d 397, 403 (D.C. Cir. 2006) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 848 n.8 (1998)).

Ali contends that his ongoing detention violates substantive due process in two ways. First, he argues that his continued detention is driven by a new blanket and punitive policy against releasing detainees and, as such, is "untethered to any ongoing, individualized purpose to detain him." Ali Br. 20–21. Second, Ali argues that his "[p]erpetual detention" based on an "eighteen-day stay in a guest-house" shocks the conscience. Ali Br. 23. Neither argument succeeds.

*First*, Ali's detention is long because the armed conflict out of which it arises has been long, continuing to the present day. *See* Letter to Congressional Leaders on the Global Deployment of United States Combat-Equipped Armed Forces, 2018 DAILY COMP. PRES. DOC. NO. 00416, at 2 (June 8, 2018) ("The United States remains in an armed conflict, including in Afghanistan and against the Taliban, and active hostilities remain ongoing."). Given that, Ali's detention still serves the established law-of-war purpose of "prevent[ing] captured individuals from returning to the field of battle and taking up arms once again." *See Hamdi*, 542 U.S. at 518, 521 (plurality opinion) ("[W]e understand Congress' grant of authority for the use of 'necessary and appropriate force' to include the authority to detain for the duration of the relevant

conflict, and our understanding is based on longstanding law-of-war principles."); *see also Al-Alwi v. Trump*, 901 F.3d 294, 297–298 (D.C. Cir. 2018).

Ali does not dispute that hostilities authorized by the AUMF are ongoing. Oral Arg. Tr. 22:19–23. And although the AUMF was initially enacted in 2001, Congress reaffirmed the government's interest in detaining enemy combatants by passing the National Defense Authorization Act in 2011. Pub. L. No. 112-81, § 1021(a), (c)(1), 125 Stat. at 1562 (affirming "that the authority of the President to use all necessary and appropriate force pursuant to the [AUMF] includes the authority for the Armed Forces of the United States to detain covered persons" until the end of the hostilities). Whatever subjective motivations Ali might impute to the government, its original and legitimate purpose for detaining him—recognized by the law of war and Supreme Court precedent—persists.

On top of that, Ali has little ground to stand on in claiming that time has dissipated the threat he poses. The Guantanamo Bay Periodic Review Board has specifically reviewed Ali's detention no less than eight times to determine whether his continued detention remains necessary to protect against a significant security threat to the United States. *See generally* Exec. Order No. 13,567, 76 Fed. Reg. 13,277 (March 7, 2011) (establishing the Periodic Review Board). And each time the Periodic Review Board has recommended continued detention because of the threat his release would pose.[3]

---

[3] *See* Periodic Review Board, Unclassified Summary of Final Determination for ISN 685 (July 6, 2016), https://www.prs.mil /Portals/60/Documents/ISN685/20160706_U_ISN_685_FINAL_D ETERMINATION.pdf (initial full review); Periodic Review Board, File Review—Said bin Brahim bin Umran Bakush (AG-685) (Feb. 3, 2017), https://www.prs.mil/Portals/60/Documents/ISN685 /FileReview/170104_U_ISN685_FINAL_DETERMINATION_PU

In its most recent full review of Ali's detention, the Periodic Review Board "determined that continued law of war detention of the detainee remains necessary to protect against a continuing significant threat to the security of the United States." *See* Periodic Review Board, Unclassified Summary of Final Determination for ISN 685 (Feb. 28, 2019), https://www.prs.mil/Portals/60/Documents/ISN685/SubsequentReview1/20190228_U_ISN_685_FINAL_DETERMINATION_PUBLIC.pdf (second full review). In reaching this conclusion, the Board "considered the detainee's elevated

---

BLIC_V1.pdf (first file review); Periodic Review Board, File Review—Said bin Brahim bin Umran Bakush (AG-685) (Aug. 2, 2017), https://www.prs.mil/Portals/60/Documents/ISN685/FileReview2/20170802_U_ISN_685_FINAL_DETERMINATION_MFR_PUBLIC.pdf (second file review); Periodic Review Board, File Review—Said bin Brahim bin Umran Bakush (AG-685) (March. 18, 2018), https://www.prs.mil/Portals/60/Documents/ISN685/FileReview3/20180216_U_ISN_685_FINAL_DETERMINATION_MFR_PUBLIC.pdf (third file review); Periodic Review Board, File Review—Said bin Brahim bin Umran Bakush (AG-685) (Aug. 13, 2018), https://www.prs.mil/Portals/60/Documents/ISN685/FileReview4/20180717_U_FOUO_ISN685_MFR_PRB_U_PR.pdf (fourth file review); Periodic Review Board, Unclassified Summary of Final Determination for ISN 685 (Feb. 28, 2019), https://www.prs.mil/Portals/60/Documents/ISN685/SubsequentReview1/20190228_U_ISN_685_FINAL_DETERMINATION_PUBLIC.pdf (second full review); Periodic Review Board, File Review—Said bin Brahim bin Umran Bakush (AG-685) (Sept. 13, 2019), https://www.prs.mil/Portals/60/Documents/ISN685/FileReview5/20190719_U_ISN_685_UNCLASSIFIED_MFR.pdf (fifth file review); Periodic Review Board, File Review—Said bin Brahim bin Umran Bakush (AG-685) (Feb. 20, 2020), https://www.prs.mil/Portals/60/Documents/ISN685/FileReview6/200116_U_FOUO_ISN685_MFR_re_Sixth_File_Review_UPR.pdf (sixth file review).

threat profile as evidenced by his prior roles in Afghanistan and prior association[,] [t]he Board's inability to assess the detainee's current threat level due to the detainee's refusal to participate in meetings with his representative, the lack of submission of any new materials by the detainee and the detainee's decision not to attend the hearing." *Id.*

And in its most recent review of Ali's case file in January 2020, the Periodic Review Board determined "by consensus" that "no significant question [was] raised as to whether [Ali's] continued detention [was] warranted." Periodic Review Board, File Review—Said bin Brahim bin Umran Bakush (AG-685) (Feb. 20, 2020), https://www.prs.mil/Portals/60 /Documents/ISN685/FileReview6/200116_U_FOUO_ISN685 _MFR_re_Sixth_File_Review_UPR.pdf (sixth file review).[4]

*Second*, the fact that hostilities have endured for a long time, without more, does not render the government's continued detention of Ali a shock to the conscience, in light of the dangers the Periodic Review Board has found to be associated with his release.

Ali attempts to downplay his connection to Zubaydah's force by characterizing it as an "eighteen-day stay in a guest-house." Ali Br. 23. But that is a long time to be in the company of senior terrorist leaders. Nor does Ali dispute that he was actively studying in their English program while there, acquiring a skill that would have equipped him to harm the United States. *See Ali II*, 736 F.3d at 548 ("[T]he record included evidence that leaders of Abu Zubaydah's force

---

[4] Because Ali has repeatedly been found to be unsuitable for relief, this case does not present the question of what protections might apply to a detainee whom the Board has determined to be suitable for release, yet who continues to be detained.

provided English language training to help prepare their members to better infiltrate English-speaking areas and launch successful terrorist attacks."). Finally, Ali has provided no sound basis for concluding that either his ability or his desire to rejoin opposing forces has diminished.

**2**

Ali also argues that, as a matter of procedural due process, the extended duration of the government's detention of detainees at Guantanamo Bay requires the government to show, by clear and convincing evidence, that continued detention is necessary to avoid specific, articulable dangers. He further contends that the Due Process Clause precludes the use of hearsay evidence and bars the presumption of regularity with respect to the government's evidence. Circuit precedent forecloses each of those arguments.

To begin with, we have repeatedly held that, to uphold an order of detention, the individual's status as an enemy combatant need only be proved by a preponderance of the evidence. *See, e.g.*, *Uthman v. Obama*, 637 F.3d 400, 403 n.3 (D.C. Cir. 2011) ("Our cases have stated that the preponderance of the evidence standard is constitutionally sufficient and have left open whether a lower standard might be adequate to satisfy the Constitution's requirements for wartime detention."); *Awad v. Obama*, 608 F.3d 1, 11 (D.C. Cir. 2010) ("Lest there be any further misunderstandings, let us be absolutely clear. A preponderance of the evidence standard satisfies constitutional requirements in considering a habeas petition from a detainee held pursuant to the AUMF."); *see also Al-Bihani*, 590 F.3d at 878.

The same holds true for the use of hearsay evidence during habeas corpus and other detention proceedings. *See Al-Bihani*, 590 F.3d at 879.

As for the presumption of regularity, it is not at all clear that the presumption has even been used in Ali's case. *See Ali I*, 741 F. Supp. 2d at 25–27 (setting forth the district court's factual findings and its conclusion that Ali was a member of Zubaydah's force); *see also Barhoumi*, 609 F.3d at 423 ("We review the district court's findings of fact for clear error[.]"). In any event, this court's cases have also expressly granted a presumption of regularity to certain government evidence. *See Latif v. Obama*, 666 F.3d 746, 755 (D.C. Cir. 2011).

The bottom line is that we are not at liberty to rewrite circuit precedent in the way Ali desires. *See LaShawn A. v. Barry*, 87 F.3d 1389, 1395 (D.C. Cir. 1996) (en banc) ("One three-judge panel * * * does not have the authority to overrule another three-judge panel of the court.").

Ali responds that, despite these precedents, a new balancing under *Mathews v. Eldridge*, 424 U.S. 319 (1976), is necessary because, as his detention drags on, the government's asserted security interest in his continued detention grows weaker while his liberty interest grows stronger. *See Rasul v. Bush*, 542 U.S. 466, 488 (2004) (Kennedy, J., concurring) ("[A]s the period of detention stretches from months to years, the case for continued detention to meet military exigencies becomes weaker."). In other words, according to Ali, a new balancing analysis is in order because any assumption that wartime detention will be temporary "has long since dissipated" given the prolonged hostilities. Ali Br. 25.

That argument does not extract Ali from the force of binding circuit precedent. In developing the procedures

applicable to AUMF challenges, this court contemplated that detentions could last for the duration of hostilities. *See Uthman*, 637 F.3d at 402 ("The AUMF, among other things, authorizes the Executive Branch to detain for the duration of hostilities those individuals who are part of al Qaeda or the Taliban."); *Awad*, 608 F.3d at 11 (explaining that the government's "authority to detain an enemy combatant is not dependent on whether an individual would pose a threat to the United States or its allies if released but rather upon the continuation of hostilities"). The length for which hostilities might continue was uncertain then and continues to be uncertain now. And this court's ruling on Ali's initial habeas petition expressly recognized that Ali may be detained for an extended, and uncertain, period of time:

> We are of course aware that this is a long war with no end in sight. We understand Ali's concern that his membership in Zubaydah's force, even if it justified detention as an enemy combatant for some period of time, does not justify a "lifetime detention." But the 2001 AUMF does not have a time limit, *and the Constitution allows detention of enemy combatants for the duration of hostilities*.

*Ali II*, 736 F.3d at 552 (emphasis added) (citation omitted).

Indeed, Ali agrees that, if the hostilities covered by the AUMF were a more traditional type of war that continued for this same length of time, there would be no substantive due process objection to continued detention. Oral Arg. Tr. 21:15–19. Yet Ali cites no authority suggesting that the form of hostilities that enemy combatants undertake changes the law of war's authorization of their continued detention, especially when, as here, the government has found that the threat Ali poses continues.

17

## C

Finally, Ali argues that this court may avoid the substantive and procedural due process issues altogether by applying the canon of constitutional avoidance and construing the AUMF to limit the duration of detentions. *See, e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001) ("[I]t is a cardinal principle of statutory interpretation * * * that when an Act of Congress raises a serious doubt as to its constitutionality," courts must "ascertain whether a construction of the statute is fairly possible by which the question may be avoided.") (formatting modified). But because the specific constitutional claims that Ali presses have already been considered and rejected by circuit precedent, there are no constitutional rulings to be avoided.

## III

For all of those reasons, the district court's denial of Ali's petition for a writ of habeas corpus is affirmed.

*So ordered.*

RANDOLPH, *Senior Circuit Judge*:  I concur only in the judgment.  I do so because *Qassim v. Trump*, 927 F.3d 522 (D.C. Cir. 2019), on which the majority relies, cannot be reconciled with the law of this circuit or with the Supreme Court's interpretation of the Constitution.

*Qassim* announced that "Circuit precedent leaves open and unresolved" the question whether detainees at the Guantanamo Bay Naval Station in Cuba are entitled to the "procedural" due process protections of the Fifth Amendment even though circuit precedent foreclosed "substantive" due process claims. 927 F.3d at 530.  That depiction of circuit precedent was not accurate and, more important, it contradicted decisions of the Supreme Court.  Rather than "open and unresolved," it is "well established" that the protections of the Fifth Amendment's Due Process Clause "do not extend to aliens outside the territorial boundaries" of the United States, including those held at Guantanamo Bay.  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

To explain my position I begin where *Qassim* and today's majority opinion should have begun – with the Supreme Court's interpretation of the Due Process Clause.  I follow a well-marked path.  *See Qassim v. Trump*, 938 F.3d 375, 376 (D.C. Cir. 2019) (Henderson and Rao, JJ. dissenting from denial of *en banc* review); *see also Hernandez v. United States*, 785 F.3d 117, 125-28 (5th Cir. 2015) (Jones, J. concurring).[1]

---

[1] The Fifth Circuit's *en banc* decision in *Hernandez* was vacated on other grounds by the Supreme Court.  *See Hernandez v. Mesa*, 137 S.Ct. 2003.  On remand, the Fifth Circuit (*en banc*) largely reiterated the relevant portions of Judge Jones's 2015 concurring opinion.  *See, e.g.*, 885 F.3d 811, 817 (5th Cir. 2018) (noting that "no federal circuit has extended the holding of *Boumediene* [*v. Bush*, 553 U.S. 723 (2008)] . . . to other constitutional provisions).  This most recent *Hernandez* Fifth Circuit decision was affirmed by the Supreme Court.  *See Hernandez v. Mesa*, 140 S.Ct. 735 (2020).

### 1. Johnson v. Eisentrager, 339 U.S. 763 (1950)

The Supreme Court's seminal decision in *Eisentrager,* rendered in the twilight of World War II, interpreted the Due Process Clause of the Fifth Amendment to the Constitution. That well known Clause states: "nor shall *any person . . .* be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V (emphasis added).

The lower court in *Eisentrager* – which happened to be the D.C. Circuit – ruled that "any person" in the Due Process Clause included "an enemy alien deprived of his liberty" by the United States "anywhere in the world." 339 U.S. at 767, 782.[2] The Supreme Court in *Eisentrager* firmly rejected that interpretation. *Eisentrager's* holding was clear, it was precise, and it was contrary to *Qassim*: a nonresident alien enemy detained by the United States outside of our sovereign territory was, the Court decided, not "any person" within the meaning of the Fifth Amendment and therefore not entitled to the protections of the Due Process Clause. *Id.* at 782-85.

The *Qassim* court paid no attention to the Supreme Court's interpretation of "any person" in the Fifth Amendment. There is no good explanation for this omission. The Supreme Court's ruling made it irrelevant whether the alien's claim was one of "procedural" due process or "substantive" due process. Under *Eisentrager,* it was the status of the individual as an alien enemy held outside the United States, not the nature of his claims, that barred application of the Due Process Clause. As I will discuss in a moment, when the Supreme Court years later

---

[2] *See Eisentrager v. Forrestal*, 174 F. 2d 961, 963-65 (D.C. Cir. 1949).

considered *Eisentrager* again*,* it put the case on precisely that footing.

In light of *Eisentrager*, whether an alien enemy held at Guantanamo Bay[3] may invoke the Due Process Clause is not – to use *Qassim's* words – "open and unresolved." Even so, the *Qassim* panel insisted that its opinion "explains in detail its consistency with" *Eisentrager*.[4] It did nothing of the sort.

*Qassim* relegated *Eisentrager* to a footnote. The footnote gave the case citation and appended a brief parenthetical. The parenthetical was misleading. It described *Eisentrager* as having decided "that enemy aliens engaged in

---

[3] Guantanamo is not part of the sovereign territory of the United States. The Detainee Treatment Act of 2005, Pub. L. No. 109–148, 119 Stat. 2680 (2005), so provides: "'United States,' when used in a geographic sense . . . does not include the United States Naval Station, Guantanamo Bay, Cuba." Also, Guantanamo is not part of the United States under the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(38).

Even if there were some doubt about Guantanamo Bay's status, "[w]ho is the sovereign, *de jure* or *de facto*, of a territory is not a judicial, but is a political question, the determination of which by the legislative and executive departments of any government conclusively binds the judges." *Jones v. United States*, 137 U.S. 202, 212 (1890), *quoted in Oetjen v. Central Leather Co.*, 246 U.S. 297, 302 (1918) *and Zivotofsky ex rel. Zivotofsky v. Kerry*, 135 S.Ct. 2076, 2091 (2015). Thus, "determination of [American] sovereignty over an area is for the legislative and executive departments." *Vermilya-Brown Co. v. Connell*, 335 U.S. 377, 380 (1948).

[4] *Qassim v. Trump*, 938 F.3d 375, 376 (D.C. Cir. 2019) (Millett, Pillard, and Edwards, JJ., concurring in denial of *en banc* review).

4

hostile action against the United States have no immunity from military trial." 927 F.3d at 529 n.5. There is not a word about the Supreme Court's interpretation of "any person" in the Due Process Clause. In today's opinion, the majority does not even cite *Eisentrager*, let alone explain how it can possibly be squared with *Qassim*.

To sum up, *Eisentrager's* holding gives the lie to *Qassim's* assertion that it was an open question whether Guantanamo detainees were entitled to due process, procedural or otherwise.[5]

Neither the *Qassim* opinion nor the majority opinion in this case can be rationalized on the basis that *Boumediene v. Bush*, 553 U.S. 723 (2008), rendered *Eisentrager's* Fifth Amendment holding a dead letter. First of all, before *Qassim* we had already decided that *Boumediene* did not "disturb existing law governing the extraterritorial reach of any constitutional provisions, other than the Suspension Clause." *Rasul v. Myers,* 563 F.3d 527, 529 (D.C. Cir. 2009) (per curiam). That is, *Boumediene* was "'explicitly confined'" to the Suspension Clause and did not disturb "*Eisentrager* and its progeny." *Id.* at

---

[5] The executive branch has, since at least 2009, articulated the procedures to be used for the review and disposition of Guantanamo detainees. These Executive Orders appear to recognize that the Fifth Amendment does not apply to the non-resident aliens held at the naval station. *See, e.g.*, Exec. Order 13492, 74 Fed. Reg. 4897-99 (no mention of constitutional due process, but noting that individuals held at Guantanamo "have the constitutional privilege of the writ of habeas corpus"); Exec. Order 13567, 76 Fed. Reg. 13277 (establishing, "*as a discretionary matter*, a process to review on a periodic basis the executive branch's continued, discretionary exercise of existing detention authority in individual cases") (emphasis added).

529. *See also United States v. Bahlul*, 840 F.3d 757, 796 (D.C. Cir. 2016) (Millett, J.,concurring) (quoting *Rasul*).[6]

Perhaps the *Qassim* court believed that *Boumediene* eroded *Eisentrager's* precedential value because *Boumediene* stated that "there are critical differences between Landsberg Prison, circa 1950, and the United States Naval Station at Guantanamo Bay in 2008." 553 U.S. at 768. *Boumediene* added that Guantanamo Bay "is no transient possession" and is in "every practical sense" "within the constant jurisdiction of the United States." 553 U.S. at 768-69.

But *Qassim* made no attempt to distinguish *Eisentrager* on this basis. More, Guantanamo Bay is not within the sovereign territory of the United States, and its legal status is not for the courts to decide. *See* note 5, *supra*. More still, immediately after declaring that the naval station "is no transient possession," *Boumediene* once again made clear that the scope of its opinion concerned only the Suspension Clause. *See* 553 U.S. at 769 (acknowledging that "there are costs to holding the Suspension Clause applicable in a case of military detention abroad" but distinguishing *Eisentrager* nonetheless). Guantanamo's status thus cannot be used as a basis for expanding, *sua sponte*, the reach of the Fifth Amendment.

Second, even if *Boumediene* somehow put *Eisentrager* into doubt, the *Qassim* court failed to heed the Supreme Court's warning that its "decisions remain binding precedent until we see fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality." *Hohn*

---

[6] The Ninth Circuit agrees. *See Thuraissigiam v. U.S. Dep't of Homeland Security*, 917 F.3d 1097, 1111-12 (9th Cir. 2019) ("*Boumediene* itself clearly recognized the distinction between the Fifth Amendment's due process rights and the Suspension Clause").

*v. United States*, 524 U.S. 236, 252–53 (1998). When a Supreme Court decision "has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to th[e Supreme] Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Express, Inc*., 490 U.S. 477, 484 (1989); *see also id*. at 486 (Stevens, J., dissenting); *Agostini v. Felton*, 521 U.S. 203, 237 (1997); *see also id.* at 258 (Ginsburg, J., dissenting); *State Oil Co. v. Khan*, 522 U.S. 3, 9, 20 (1997); *Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, 460 U.S. 533 (1983) (per curiam).[7]

**2. United States v. Verdugo-Urquidez, 494 U.S. 259 (1990)**

The ultimate issue in *Verdugo-Urquidez* was "whether the Fourth Amendment applies to the search and seizure by the United States of property that is owned by a nonresident alien and located in a foreign country." 494 U.S. at 261. *Qassim* was not directly concerned with the Fourth Amendment and neither

---

[7] *Qassim* and today's majority opinion quote *Boumediene's* statement that the Suspension Clause requires that a record be made to allow for "meaningful review." *See Qassim*, 924 F.3d at 524 (quoting *Boumediene*, 553 U.S. at 783). This phrase did not confer upon the lower federal courts a free-wheeling authority to disregard Supreme Court precedent. The Court was not overruling any of its cases outside the Suspension Clause. As then-Judge Kavanaugh put it for our court, "[m]eaningful review in this context requires that a court have 'some authority to assess the sufficiency of the Government's evidence against the detainee' and to 'admit and consider relevant exculpatory evidence' that may be added to the record by petitioners during review." *Al-Bihani v. Obama*, 590 F.3d 866, 875 (D.C. Cir. 2010), quoting *Boumediene,* 553 U.S. at 786.

are we in this case.  But *Qassim* should have been concerned with the reasoning the Supreme Court used to decide that the Fourth Amendment did not apply.

*Verdugo-Urquidez* discussed *Eisentrager* not in a parenthetical in a footnote but in the text of the opinion. *Eisentrager*, the Supreme Court wrote, "rejected the claim that aliens are entitled to Fifth Amendment rights outside the sovereign territory of the United States."  494 U.S. at 269.  To the Supreme Court, "our rejection of the extraterritorial application of the Fifth Amendment was emphatic," 494 U.S. at 269.  After quoting the *Eisentrager* opinion,[8] the *Verdugo-Urquidez* Court wrote this: "If such is true of the Fifth Amendment, which speaks in the relatively universal term of 'person,' it would seem even more true with respect to the Fourth Amendment, which applies to 'the people.'" *Id.*

This portion of the *Verdugo-Urquidez* opinion was not dicta.  It was instead an intermediate step in the Court's reasoning.  There was nothing extraneous about the Court's comparing the Fourth Amendment with *Eisentrager*'s interpretation of the Fifth Amendment.  This is why the Court in a later case treated *Verdugo-Urquidez* as having "established" that Fifth Amendment protections "are unavailable to aliens outside our geographic borders." *Zadvydas v. Davis*, 533 U.S.

---

[8] The Court quoted this language from *Eisentrager*: "Such extraterritorial application of organic law would have been so significant an innovation in the practice of governments that, if intended or apprehended, it could scarcely have failed to excite contemporary comment.  Not one word can be cited.  No decision of this Court supports such a view. *Cf. Downes v. Bidwell*, 182 U.S. 244.  None of the learned commentators on our Constitution has ever hinted at it.  The practice of every modern government is opposed to it." *Eisentrager*, 339 U.S. at 784.

678, 693 (2001).[9] Even if one were to consider the Court's Fifth Amendment discussion as dicta,[10] which it is not, *Qassim* cannot be harmonized with *Verdugo-Urquidez*. Did *Qassim* even try to distinguish *Verdugo-Urquidez*? It did not.

*Qassim* again relegated the Supreme Court's opinion to a footnote, giving the official case citation and attaching a parenthetical stating: "Fourth Amendment protections do not apply extraterritorially to a search conducted within a foreign country of property belonging to a foreign citizen with no voluntary connection to the United States." 927 F.3d at 529 n. 5. And that was that. *Qassim* said not a word about the Supreme Court's analysis of the Due Process Clause or the Court's discussion of *Eisentrager*, even though both directly impacted the issue before the *Qassim* court. The majority opinion in this case follows suit.

### 3. Zadvydas v. Davis, 533 U.S. 678 (2001)

In *Zadvydas*, the Supreme Court stated that: "It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders." 533 U.S. at 693. In support of this

---

[9] *See* pp. 8-9 *infra*.

[10] *Harbury v, Deutch*, 233 F.3d 596, 604 (D.C. Cir. 2000), *rev'd on other grounds sub nom. Christopher v. Harbury*, 536 U.S. 403 (2002), held that even if the Fifth Amendment discussion in *Verdugo-Urquidez* was "dicta," "it is firm and considered dicta that binds this court." The court therefore ruled that the Due Process Clause did not apply to "foreign nationals living abroad." 233 F.3d at 602. As to the binding force of *Verdugo-Urquidez's* analysis of the Fifth Amendment, *see also People's Mojahedin Org. of Iran v. U.S. Dep't of State*, 182 F.3d 17, 22 (D.C. Cir. 1999).

statement of constitutional law the Court (*id.*) cited two cases: "*See United States v. Verdugo-Urquidez*, 494 U.S. 259, 269 (1990) (Fifth Amendment's protections do not extend to aliens outside the territorial boundaries); *Johnson v. Eisentrager*, 339 U.S. 763, 784 (1950) (same)."

How did *Qassim* respond to the Supreme Court's recital of this "well established" Fifth Amendment law? Once again the answer is that the opinion did not respond. Instead, as it did with *Eisentrager* and *Verdugo-Urquidez*, the *Qassim* court tried to hide the ball. It reduced *Zadvydas* to a footnote citation with a parenthetical reading: "addresses the immigration power to exclude aliens from entering the United States." *Qassim*, 927 F.3d at 529 n. 5. This conveyed the impression that *Zadvydas* had nothing pertinent to say about the issue before the *Qassim* court, which of course was not true. Once again this portion of *Zadvydas* is ignored in today's majority opinion.

### 4. Precedent of the D.C. Circuit Pre-*Kiyemba*

Qassim's team of attorneys candidly admitted that the law of this circuit was against them.[11] On behalf of their client in the district court, they "entered into a stipulation with the government disputing the allegations against him but conceding that, under the existing legal standards which denied him due process and the ability to see and confront the evidence against him, he could not prevail." *Qassim v. Trump*, Dkt. No. 18-5148, Appellant's Br. 10. On appeal, Qassim's attorneys conceded that circuit precedent foreclosed his sole argument "that the

---

[11] While they deserve credit for their honest evaluation of circuit precedent, they failed to address or even mention the most important Supreme Court decisions – *Eisentrager*, *Verdugo-Urquidez* and *Zadvydas*, opinions repeatedly cited in the decisions of our court and in the government's brief in *Qassim*.

Fifth Amendment's due process clause applies to unprivileged enemy combatants detained at Guantanamo Bay." *Qassim v. Trump*, Dkt. No. 18-5148, Appellees' Br. 4.[12]

Despite these concessions, the *Qassim* panel reached out and decided the very issue the parties had conceded, and decided it – obviously without any briefing – in a way that was the opposite of what the parties had stipulated.

The *Qassim* opinion devoted most of its attention to one circuit case – *Kiyemba v. Obama*, 555 F.3d 1022 (D.C. Cir. 2009), *vacated*, 559 U.S. 131, *and reinstated as amended*, 605 F.3d 1046 (D.C. Cir. 2010). *Kiyemba*, relying on the Supreme Court's opinions in *Eisentrager, Verdugo-Urquidez* and *Zadvydas*, held that "the due process clause does not apply to aliens without property or presence in the sovereign territory of the United States." 555 F.3d at 1026. According to *Qassim*, however, this meant only that the Guantanamo detainees had no *substantive* due process rights, which left open the question whether they had *procedural* due process rights. After all, *Qassim* reasoned, only a substantive due process right was involved in *Kiyemba*.

That distinction is too clever by half.[13] It once again tries

---

[12] Qassim's attorneys recognized that the panel of our court assigned to his case could not "overrule or disregard prior panel holdings," but could "request[] proceedings *en banc* to reconsider" circuit precedent. *Qassim v. Trump*, Dkt. No. 18-5148, Appellant's Br. 5.

[13] A separate statement issued in an earlier stage of this case put the substantive-procedural bee in *Qassim's* bonnet. *See Qassim*, 927 F.3d at 528 (citing and quoting *Ali v. Trump*, 2019 WL 850757 at *2 (D.C. Cir. 2019) (Tatel, J. concurring in denial of *en banc* review)).

to divert attention from the essential points of the Supreme Court opinions in *Eisentrager, Verdugo-Urquidez* and *Zadvydas*, opinions on which *Kiyemba* and other cases from this circuit relied. As I have explained, those Supreme Court opinions render *Qassim's* substantive-procedural dichotomy irrelevant as a matter of constitutional law. The reason the Due Process Clause did not apply in *Kiyemba* was not that the detainees had raised a "substantive" due process claim.[14] The phrase "substantive due process" does not appear in the *Kiyemba* opinion. The detainees were not entitled to the protection of the Due Process Clause because the Supreme Court has decided that aliens outside of the United States do not qualify as "any person" within the meaning of the Fifth Amendment.

In addition to the opinions of the Supreme Court, *Kiyemba* relied upon five opinions of this circuit: *Pauling v.*

---

That statement did not confront, indeed did not even mention, any of the Supreme Court's opinions. My colleague may perhaps be excused because the en banc petitioner failed to mention any of those cases. *See* note 11, *infra*.

Even so, the statement to which I refer confirms my long-standing objection to the practice of individual judges issuing opinions on denials of rehearing *en banc*. I thought then and think now that the practice "rubs against the grain of Article III's ban on advisory opinions. The manner in which these *en banc* 'bulletins' are formulated does not simulate the process of the court when it is actually deciding a case. If recurring issues are addressed, *en banc* statements may be tantamount to prejudgments," and – as we see in this case – often are. *Independent Insurance Agents of America, Inc. v. Clarke*, 965 F. 2d 1077,1080 (D.C. Cir. 1992).

[14] *Eisentrager* itself cannot be distinguished on any such basis. The habeas petitioners in *Eisentrager* raised procedural due process claims. *See Eisentrager v. Forrestal*, 174 F.2d at 963.

*McElroy*, 278 F.2d 252, 254 n.3 (D.C. Cir. 1960) (per curiam); *People's Mojahedin Organization of Iran v. U.S. Department of State*, 182 F.3d 17, 22 (D.C. Cir. 1999); *Harbury*, 233 F.3d at 603; *32 County Sovereignty Committee v. U.S. Department of State*, 292 F.3d 797, 799 (D.C. Cir. 2002); *Jifry v. FAA*, 370 F.3d 1174, 1182 (D.C. Cir. 2004). Each of these cases supported *Kiyemba's* holding that "the due process clause does not apply to aliens without property or presence in the sovereign territory of the United States." 555 F.3d at 1026.

*Qassim*, although purporting to recite the law of our circuit, completely neglected these cases upon which *Kiyemba* relied. This omission is all the more egregious because of the five circuit precedents, four denied *procedural* due process rights to aliens without property or presence in the United States – the very issue *Qassim* asserted was an open question in our court. *See People's Mojahedin*, 182 F.3d at 22, 25; *Harbury*, 233 F.3d at 598, 604; *32 County Sovereignty,* 292 F.3d at 798; and *Jifry*, 370 F.3d at 1176, 1183.

## 5. Precedent of the D.C. Circuit Post-*Kiyemba*

*Qassim* did cite four post-*Kiyemba* opinions of this court. Its treatment of those cases is of a piece with the rest of the *Qassim* opinion.

One of the four cases was *Rasul v. Myers*, 563 F.3d 527 (D.C. Cir. 2009). *Rasul* relied on the Supreme Court opinions in *Eisentrager* and *Verdugo-Urquidez* and concluded that "the law of this circuit also holds that the Fifth Amendment does not extend to aliens or foreign entities without presence or property in the United States." 563 F.3d at 531. *Rasul* was a procedural due process case. In order to fit the case into its narrative, *Qassim* asserted that *Rasul* – and the other post-*Kiyemba* cases – had each "reserved such Due Process questions," "such" being

procedural due process. 927 F.3d at 530. That assertion was not true with respect to *Rasul*, and it was not true of the three other cases. *Rasul* did not refuse to decide whether the detainees at Guantanamo were entitled to procedural due process. *Rasul* decided that question and plainly held they were not so entitled. *See* 563 F.3d at 531. What the *Qassim* opinion is referring to something quite different. It is *Rasul's* statement that whether "*Boumediene* has eroded the precedential force of *Eisentrager* and its progeny. . . is not for us to determine; the Court has reminded the lower federal courts that it alone retains the authority to overrule its precedents." 563 F.3d at 529.

The second post-*Kiyemba* case is *Al-Madwhani v. Obama*, 642 F.3d 1071 (D.C. Cir. 2011). *Al-Madwhani* held that Guantanamo detainees could not rely on *procedural* due process, stating flatly "that the detainees at Guantanamo Bay possess no constitutional due process rights." 642 F.3d at 1077 (citing *Kiyemba*) (alterations omitted). The *Al-Madwhani* court then wrote this: "Even assuming Madhwani had a constitutional right to due process and assuming the district court violated it by relying on evidence outside the record—***premises we do not accept***—such error would be "harmless beyond a reasonable doubt . . .." *Id*. (emphasis added). The *Qassim* opinion omitted the highlighted language and by doing so, gave the false impression that *Al-Madhwani* left open the question whether procedural due process applied at Guantanamo.

*Qassim* cited two other Guantanamo cases in support of its claim that post-*Kiyemba* decisions of this court had reserved the question whether "constitutional procedural protections" applied to the detainees. 927 F.3d at 530. As to one of them – *Aamer v. Obama*, 742 F.3d 1023 (D.C. Cir. 2014) – *Qassim* correctly states that the opinion assumed "without deciding that the constitutional right to be free from unwanted medical treatment extends to nonresident aliens detained at

Guantanamo." 927 F.3d at 530. The reason why this use of *Aamer* is so misleading should be apparent: whether a detainee may refuse medical treatment concerns *substantive* not procedural rights. The *Aamer* court confirmed as much, noting that the detainees "advance two separate substantive claims regarding the legality of force-feeding." 742 F.3d at 1038.

The same objection pertains to the fourth case *Qassim* cited – *Kiyemba v. Obama*, 561 F.3d 509, 518 n.4 (D.C. Cir. 2009) ("*Kiyemba II*"). As in *Aamer*, *Kiyemba II* dealt explicitly and only with substantive due process rights. The detainees there asserted an "interest in avoiding torture or mistreatment by a foreign nation" to challenge the government's decision to transfer them from Guantanamo Bay to another country. 561 F.3d at 518.

\* \* \*

"Inconsistency is the antithesis of the rule of law. For judges, the most basic principle of jurisprudence is that 'we must act alike in all cases of like nature.'" *LaShawn A v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (*en banc*). The law-of-the-circuit doctrine implements that principle: the *same issue* presented in a *later case* in the *same court* should lead to the *same result*. *Id.* That doctrine, together with the Supreme Court's admonition that the lower courts must adhere to the Court's precedents without anticipating their overruling, were blatantly disregarded in *Qassim*. "When a decision of one panel is inconsistent with the decision of a prior panel, the norm is that the later decision, being a violation of fixed law, cannot prevail." *Sierra Club v. Jackson*, 648 F.3d 848, 854 (D.C. Cir. 2011). And "it is for the Supreme Court, not us, to proclaim error in its past rulings, or their erosion by its adjudications since." *Breakefield v. District of Columbia*, 442 F.2d 1227, 1230 (D.C. Cir. 1970). For these reasons, I would affirm the

district court's denial of Ali's petition based on a straightforward application of *Eisentrager*, *Verdugo-Urquidez*, *Zadvydas*, and the litany of circuit cases since *Eisentrager* confirming that the Fifth Amendment does not apply to aliens without property or presence in the United States.